THE STATE OF KANSAS v. CHARLES M. McMURRY.

No. 11,489. (58 Pac. 961.)

ARSON—*Defense of Insanity*—*Probate Record.* The record of
a proceeding in lunacy by which it appeared that a person was
found by a jury and adjudged by the probate court to be of un-
sound mind, and confined in an asylum for the insane, but subse-
quently discharged therefrom, "not restored to his right mind,"
is receivable in evidence on the issue of insanity raised by the
person in defense to an information for crime alleged to have been
committed by him between seven and eight years after the inqui-
sition of lunacy.

Appeal from Franklin district court; S. A. RIGGS,
judge. Opinion filed November 11, 1899. Reversed.

*A. A. Godard,* attorney-general, for The State.

*H. P. Welsh,* for appellant.

The opinion of the court was delivered by

DOSTER, C. J.: This is an appeal from a judgment
of conviction of the crime of arson. Insanity, among
other defenses, was relied on for an acquittal. The in-
formation charged the commission of the offense on
the 11th day of November, 1897. The defendant
offered in his behalf the record of an inquisition of
lunacy by which it appeared that he had been, by the
verdict of the jury and the judgment of the probate
court, on the 21st day of April, 1890, found to be a
person of unsound mind and incapable of managing
his affairs. It further appeared by indorsement made
on the record that he had been discharged from the
asylum on the 7th day of February, 1891, "not re-
stored to his right mind." An objection was made
to the introduction of this record in evidence, which
was sustained. In this we think the court erred.
The time intermediate the adjudication in the probate

court and the date of the commission of the alleged offense was considerable, it is true, but the general rule is that a condition of insanity, if shown to exist, is presumed to continue. This presumption is, of course, a disputable one, and evidence of the actual condition of mind at any particular subsequent time is properly receivable, but on the question of sanity the record of a proceeding in lunacy is properly receivable for the purpose of proof of an insane state of mind at a particular time in question, and thereby to give rise to the presumption of its continuance from that date.

We know of no subsequent time at which this presumption ceases. The lapse of much time during which the patient has not been confined for his malady, or known as a fact to be insane, may so materially weaken the presumption as practically to neutralize it, but nevertheless an accused person who alleges his insanity as an excuse for his act is entitled to introduce in his behalf all the admissible evidence he can command.

May the record of the proceedings in lunacy be received to prove the fact of insanity? We think it may. Ordinarily the judgment of a court is not receivable in a controversy to which a stranger to the judgment is a party, except merely to prove its existence and effect. (2 Whart. Ev. § 823.) An exception, however, is made in the case of judgments *in rem* declaring the status of persons or things. These are adjudications to which, in a sense, the whole world is a party. In some cases these judgments bind all persons conclusively. In others such persons are only bound to allow the presumption of the truth of their recitals. Of this latter class are inquisitions in lunacy. The rule is so stated by all the authorities.

Among them we select for quotation the text of Taylor on Evidence, as being perhaps the fullest and most accurately expressed :

" The best definition of a judgment *in rem* is that it is ' an adjudication pronounced, as its name indeed denotes, upon the status of some particular subject-matter by a tribunal having competent authority for that purpose.' This definition would seem, however, to include convictions on criminal prosecutions, inquisitions in lunacy, inquisitions *post mortem*, and several other species of judicial determinations, which, if they are judgments *in rem* at all, are at least not governed by the same rules of evidence as are generally applicable to adjudications of that nature. In general, a judgment *in rem* furnishes conclusive proof of the facts adjudicated as well against strangers as against parties ; but this rule does not extend either to criminal convictions, which are subject to the same rules of evidence as ordinary judgments *inter partes*, or to inquisitions in lunacy, inquisitions *post mortem*, or other inquisitions, which, though regarded as judgments *in rem* so far as to be admissible in evidence of the facts determined against all mankind, are not considered as conclusive evidence. An inquisition in lunacy, for instance, though admissible against strangers, is not conclusive proof of what was the state of mind of the supposed lunatic at the time of the inquiry. A similar rule also applies to most other inquisitions." ( 3 Tayl. Ev. § 1674.)

The record offered by the defendant was some evidence of his insanity at the time of the commission of the alleged offense. It should have been received. For the error of rejecting it the judgment of the court below is reversed and a new trial ordered.