**UNITED STATES of America,
Respondent-Appellee,**

v.

**Harold Wayne DAVIS, Petitioner-Appellant.**

**No. 14615.**

United States Court of Appeals
Sixth Circuit.

May 15, 1962.

Stanley Goodman, Cincinnati, Ohio, for petitioner-appellant.

William E. Scent, U. S. Atty., Ernest W. Rivers, Asst. U. S. Atty., Louisville, Ky., on brief, for respondent-appellee.

Before CECIL and O'SULLIVAN, Circuit Judges, and THORNTON, District Judge.

THORNTON, District Judge.

This is an appeal from an order of the District Court denying the motion of appellant filed pursuant to Title 28 U.S.C. § 2255 to vacate and set aside a sentence imposed on March 12, 1958 upon a plea of guilty. This is the second time the matter has been here for review, this Court previously holding that the appellant must first avail himself of the procedure authorized by Title 18 U.S.C. § 4245 before petitioning for relief under § 2255—Davis v. United States, 6 Cir., 1959, 270 F.2d 177.

In support of appellant's second motion to vacate, he relies upon the following order of the Superior Court of the State of California entered on May 20, 1941:

"It is therefore ordered, adjudged and decreed that HAROLD WAYNE DAVIS, is dangerously mentally ill, is an insane person and that HAROLD WAYNE DAVIS be committed to and confined in the Camarillo State Hospital, * * *, California.

"It is further ordered and directed that the Sheriff of the County of Los Angeles take, convey and deliver HAROLD WAYNE DAVIS to the proper authorities of said hospital, to be held and confined therein as a dangerously mentally ill or insane person as provided by law."

This order was entered by that Court upon the certification of a medical examiner that Davis' condition was "moron, possible dementia praecox; psychotic personality with psychotic episodes." The fact that this order has never been set aside, modified or vacated is the basis of appellant's claim here that there existed a presumption of his mental incapacity at the time his plea of guilty was entered herein.[1] He further contends that because of this alleged incapacity the United States had the burden of proving beyond a reasonable doubt that defendant was mentally competent and that the alleged failure to supply that proof divested the Court of jurisdiction to accept his plea of guilty. Neither at the time that the plea of guilty was entered,[1] nor at the time sentence was imposed[1] was mention made of appellant's prior alleged mental incapacity. When the second motion to vacate was filed by appellant, the District Court had the benefit of a report from the Psychiatric Board at the Hospital of the United States Penitentiary at Alcatraz. After examining appellant pursuant to Title 18, § 4245, the opinion of the Psychiatric Board was that, while Davis had a sociapathic personality, there was no evidence of psychosis, and that

he was mentally competent at the time of his trial[2] and sentence. The question as to whether or not the finding of the Psychiatric Board, under § 4245 of Title 18, was a conclusive and final remedy for determining the question of defendant's alleged insanity, which was not disclosed at the time of the plea, was not presented to the District Court for its consideration, and we do not reach it here.

The Government agreed that a hearing on appellant's second motion to vacate should be granted. Prior to the date of hearing, the District Judge, on motion of the Government, appointed two qualified psychiatrists—Dr. Trawick and Dr. Foltz —to examine Davis and to report their findings as to his mental condition at the time he entered his plea of guilty on March 12, 1958. Dr. Trawick testified at the hearing that as a result of the examination conducted by Dr. Foltz and himself "it was our opinion that if, on March 12, 1958, he had had any organic psychosis, brain disease, that there would be residual evidences of this at the present time, and that if there had been any purely psychological illness, such as psychosis, there would have been certain thinking patterns present at the present time that would have been traceable to this event. We found no evidence of this." Both medical experts established by their testimony that on March 12, 1958, appellant knew right from wrong, could discuss his problems with his attorney and assist in his own defense, and was aware of his surroundings and of what was going on around him. Dr. Foltz further testified: "From my examination he is so free and clear of any mental defects or mental illness, whether you consider it in medical or legal terms, that I don't see that it would be possible that he ever had a mental illness."

The appellant's court-appointed counsel assembled[3] and presented many records on the background of appellant dating back to the year 1941. These records were examined by the District Court pri-

---

1. March 12, 1958.

2. plea, in this instance.

3. with valuable assistance from the United States Attorney at Louisville.

or to its determination, and are here as part of the record on appeal. Among these records is documentary proof, equally probative as the order of the Superior Court of California declaring Davis insane, that at or about the same time he was not insane. One of such records is a record that on February 11, 1941 the Medical Director of the Stockton State Hospital of California discharged this appellant from that institution on the ground that "the said patient is not insane (Exhibit 2)." Another such record is a communication of April 4, 1944 containing explanatory material in relation to the aforementioned order of May 20, 1941 which provided for appellant's commitment to the Camarillo State Hospital of California as an insane person (he having been admitted to that institution on May 22, 1941). The communication is addressed to the Commanding Officer of the Army Service Forces at El Paso, Texas and is from the Chief of the Neuropsychiatric Section of the William Beaumont General Hospital at that Army base, and reads as follows:

"ARMY SERVICE FORCES
WILLIAM BEAUMONT
GENERAL HOSPITAL
Neuropsychiatric Section
EL PASO, TEXAS

GTM:MM
4 April 1944

"Subject: Disposition of Enlisted Man.

"To: The Commanding Officer, Post.

"1. Private Harold W. Davis, ASN 19175294, 962nd Bomb Sq AAF, Hobbs, New Mexico, was admitted to William Beaumont General Hospital on 26 March 1944 as a formal transfer from Station Hospital, Hobbs, New Mexico.

"When questioned as to the reason for his being hospitalized at the present time he stated 'I can't cooperate. I'm not used to taking orders and I can't do it in the army.' His past history indicates severe maladjustment all of his life. He has had difficulty since age nine, when he was sentenced to a school for delinquent children for running away from home. Since that time he has spent considerable time in penal institutions. He states that in May 1941 he was committed to the Camarillo State Hospital in California, that at the time of his commitment to the institution he was in a penitentiary, that he feigned mental illness in order to be admitted to the state hospital, that he told the doctors that he heard voices and saw visions and professed to have delusions, but he states that he has never actually experienced hallucinations or delusions, that he has never been psychotic, that the sole reason for professing to be insane was in order to avoid serving the rest of his sentence in the penitentiary.

"(He is at times surly, resentful, evasive, self-centered and belligerent.) He states that he wishes to be discharged from the Army either honorably or dishonorably. He shows no evidence of a psychosis and is sane and responsible for his conduct.

"2. *DIAGNOSIS:* (Constitutional psychopathic state, inadequate personality.)

"3. *RECOMMENDATION:* I recommend that his organization be notified to send for him and that he be separated from the Military Service in accordance with AR 615–360; Section VIII.

"/s/ Geo. T. McMahan,
GEO. T. McMAHAN,
Lt. Colonel, Medical Corps,
Chief, Neuropsychiatric
Section."

Thus, the evidence produced at the hearing on the motion to vacate sentence was corroborative of the testimony of Dr. Foltz that "I don't see that it would be possible that he ever had a mental illness." Although this appellant testified at the hearing on his motion to vacate sentence, he did not at any point deny that he had resorted to feigning the mental illness which resulted in the

commitment order of May 20, 1941 upon which he bases his entire case for vacation of sentence. He cites the case of Frame v. Hudspeth, Warden, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989, as authority for his motion. This Per Curiam is authority for no legal right other than the right to have the District Court make "full inquiry into the mental status of the petitioner at the time he entered the pleas of guilty." That right has been completely afforded to appellant here. The District Court complied fully with § 2255 and made the necessary factual determination.

From an examination of the entire record on appeal, which includes all exhibits and the transcript of the hearing on this motion, we conclude that there was sufficient evidence to sustain the finding of the District Court that the appellant was sane on March 12, 1958 when he entered his plea of guilty. This finding is not clearly erroneous and the order of the District Court denying appellant's motion to vacate sentence is therefore affirmed.